**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WARDELL LEROY GILES,                            *

Plaintiff,                                      *

v.                                              *        Civil Action No. ELH-19-1318

CORRECT CARE SOLUTIONS, INC.,                   *
THOMAS V. KIMBALL,
DOCTOR BRUCE,                                   *
DAWN CHEWNING,
AMANDA SWIFT,                                   *
BARRY BRATTEN,
                                                *
Defendants.

***

## MEMORANDUM OPINION

The self-represented plaintiff, Wardell Leroy Giles, filed suit against multiple defendants, pursuant to 42 U.S.C. § 1983, while he was incarcerated at the Wicomico County Detention Center ("WCDC") in Salisbury, Maryland. ECF 1. He has also filed several supplements and amended complaints. *See* ECF 5; ECF 7; ECF 8; ECF 11; ECF 13-1; ECF 18; ECF 19; ECF 20. .

Giles alleges that WCDC's Assistant Director, Thomas V. Kimball, and Correctional Officer Barry Bratten (collectively, "Correctional Defendants") retaliated against him by removing him from the work release program. *See* ECF 1; ECF 8; ECF 18-20. Further, Giles alleges that the medical provider at WCDC, Correct Care Solutions, Inc. ("Correct Care"), as well as its staff, Dawn Chewning, R.N., H.S.A, and Amanda Swift, R.N. (collectively, "Medical Defendants"), and "Doctor Bruce" denied him necessary medical care and retaliated against him for filing this lawsuit. *See* ECF 1; ECF 5; ECF 13.[1] He seeks monetary damages.[2]

---

[1] The Clerk shall be directed to amend the docket to reflect the full and correct names of defendants Correct Care Solutions, Inc., Dawn Chewning, Amanda Swift, and Barry Bratten.

[2] Giles also sought injunctive relief. But, as a result of his release from WCDC (ECF 25),

The Correctional Defendants have moved to dismiss or for summary judgment, pursuant to Rule 12(b) and Rule 56 of the Federal Rules of Civil Procedure. ECF 29. The motion is supported by a memorandum of law (ECF 29-1) (collectively, "Correctional Defendants' Motion") and several exhibits. Similarly, the Medical Defendants filed a dispositive motion (ECF 31), supported by a memorandum of law (ECF 31-1) (collectively, the "Medical Defendants' Motion") and exhibits.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Giles of his right to file a response in opposition to the defendants' motions. ECF 30; ECF 32. Giles has responded. ECF 33.

The matter is ripe for disposition. Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Giles's Complaint against Doctor Bruce, who has not been served with the Complaint, shall be dismissed, without prejudice. I shall otherwise construe the motions as motions for summary judgment and shall grant them.

## I.     Factual Background

Giles claims that when he arrived at WCDC in July 2018, Correct Care prescribed seizure medication for him, although he did not have a history of suffering seizures, and that the medication "damaged" him. ECF 1 at 3.[3] He also alleges that the Medical Defendants continuously refused to provide him with needed medical care. ECF 5 at 1. Giles claims that from April 6 to April 19, 2019, they failed to give him his mental health medication. *Id.* at 4.

On April 22, 2019, Giles filed an Inmate Grievance Form with WCDC, claiming that he

that claim became moot. *See* ECF 27 (Order of 7/30/19).

[3] All citations reflect their electronic pagination.

had been having severe pain, swelling, loss of movement, and blood clot symptoms in his leg, and medical refused to give him emergency care. *Id.* at 6. On April 24, 2019, defendant Chewning, a supervisory staff member, sent a memorandum to WCDC Intelligence Division ("Intel"), stating that Giles "has grieved that he is being refused medical attention for complaint of DVT." *Id.* at 5. According to Chewning, Giles was seen by nursing staff on April 13, 2019, and by a provider on April 19, 2019, and that no signs or symptoms of DVT were noted. *Id.* In addition, Chewning stated that segregation rounds were completed on Giles daily and he continued to have access to the sick call process. *Id.; see also* ECF 34-1 (Medical Records) at 258-59.

Giles filed suit on May 3, 2019. ECF 1. In a supplement to the Complaint, Giles states that on May 10, 2019, a doctor told him that he had to wait until he was released to get medical attention, despite Giles telling the doctor that he had blood clots in his leg that could lead to a pulmonary embolism. ECF 5 at 1; *see also* ECF 7. On May 20, 2019, Giles filed another Inmate Grievance Form, claiming that "medical refuses to give [him] any help with [his] left leg and foot." *Id.* at 2. An investigator responded that same day, finding Giles's claim to be unsubstantiated and noting that it had been addressed when Giles was seen on May 10, 2019. *Id.*

Giles also alleges that on May 29, 2019, defendant Kimball orally informed him that he would be assigned to work release in 20 days. ECF 11. Later that day, however, Kimball sent Giles a note that stated: "I will not change the thirty (30) day wait time to be assigned a job in work release unit. After that time period you may request a security change and assignment as your case for release procedes [sic] thru the courts." ECF 11-1 at 2.

According to Giles, on June 6, 2019, defendant Swift came to his housing unit in the afternoon attempting to persuade him to dismiss this lawsuit. ECF 13. Giles states that Swift had no paperwork or medical instruments with her at the time, and her "sole purpose was to bargain

for . . . dropping any complaints . . . in exchange that her superiors Dr. Bruce and [Chewning] would then medically clear [him]" for the work release program. *Id.*; *see* ECF 15.

According to Giles's medical records, Swift visited him for a sick call on June 10, 2019. ECF 34-1 at 260. During that visit, Giles denied having pain in his leg and expressed frustration with being prevented from participating in the work release program. *Id.* Swift noted that Giles was on work restriction due to his various complaints of pain, and that he would be enrolled in chronic care for pain management. *Id.*

On June 24, 2019, Giles informed his public defender that he had been placed in work release. ECF 18-1. Giles's inmate file reflects that on June 28, 2019, Correctional Officer Bratten filed an Incident Report indicating that other work release inmates told him Giles made a comment about running from the work release road crew and escaping. ECF 29-2 at 3. The report was forwarded to Intel for investigation on or about July 5, 2019, at which time Giles was removed from the work release program as a precaution. *Id.* at 4. On July 8, 2019, Giles filed an Inmate Grievance Form claiming that with Kimball's approval, he was removed from work release based on Bratten's false allegation that he was going to escape. ECF 18-1 at 4; ECF 20. Giles then called the Prison Rape Elimination Act ("PREA")[4] hotline to report the incident. ECF 20. According to Giles, following an investigation, Intel concluded that the escape accusation was unfounded; however, Kimball still refused to return him to the work release unit. *See* ECF 19; ECF 20. Intel informed Giles as follows: "Warden Coulbourne is the only one that can send you back to [work release]. Intel cannot make that decision." ECF 29-3.

On or about July 10, 2019, Giles was subject to an investigation and disciplinary charge

---

[4] PREA, 42 U.S.C. § 15602, *et seq.*, provides inmates with the opportunity to confidentially report sexual assaults or sexual harassment in jails and prisons via a telephone hotline.

for making the frivolous PREA hotline report. ECF 29-4. Giles admitted making the false call, telling WCDC staff that he called the PREA hotline because he "was distraught and didn't know who else to call" and "the issue was not sexual related . . . ." *Id.* at 3. WCDC found that the PREA complaint "was made in retaliation for [him] being removed from [work release]." *Id.* at 2. Consequently, Giles was charged with making a false PREA complaint, was kept out of the work release program, and was reclassified on or about July 15, 2019. *Id.* at 4-5.

Giles was released from the WCDC twelve days later, on July 25, 2019. *See* ECF 25.

## II.    Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does

not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed

discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Giles has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the Defendants' Motions as motions for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th

Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because Giles is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.   Discussion

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied*, 575 U.S. 798 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides

'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that

the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 17.

Construed liberally, Giles asserts claims for unlawful retaliation and deliberate indifference to his medical needs. The Correctional Defendants argue that Giles has failed to set forth evidence that the Correctional Defendants retaliated against him, nor does he have a protected interest in participating in the work release program. ECF 29-1. The Medical Defendants argue that there is no evidence of deliberate indifference or that Giles received inadequate medical care, nor any evidence that the Medical Defendants retaliated against him. ECF 31-1.

## A.  Correctional Defendants

Giles claims that the Correctional Defendants initially denied him placement into the work release program and later retaliated against him by removing him from the program after he filed this suit.  It is well established, however, that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison rather than another, absent a showing of significant hardship.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

Giles does not have a constitutional right to be housed in a particular prison, on a particular tier, or participate in a particular program.  *See Killian v. Hall*, 940 F.2d 652 (4th Cir. 1991) (stating that inmate "has no constitutional right to participate in work release programs") (citing *Mahfouz v. Lockhart*, 826 F.2d 791, 792 (8th Cir. 1987)).  "In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns" facing inmates.  *See Veney v. Wyche*, 293 F.3d 726, 734 (4th Cir. 2002)).  The evidence demonstrates that Giles was removed from work release pending investigation of allegations that he planned to escape, and he was provided the opportunity to file a grievance regarding his removal.  Nothing more is constitutionally required.

Retaliation is not expressly referred to in the Constitution, but it is nonetheless actionable because such conduct tends to chill an individual's exercise of constitutional rights.  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (recognizing that government may not deny a benefit on a

basis that infringes a constitutionally protected interest). A constitutional claim of retaliation has three elements: 1) the plaintiff engaged in protected conduct; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, *i.e.*, the protected conduct motivated at least in part the adverse action. *See Thaddeus-X. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

To state a prima facie claim of retaliation, the plaintiff must allege that retaliation for the exercise of protected conduct (filing this lawsuit) was the "substantial" or "motivating" factor behind defendants' allegedly improper conduct of removing him from work release. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the plaintiff makes a prima facie showing, the burden shifts to defendants to demonstrate that they would have reached the same decision, even in the absence of Giles's constitutionally protected conduct. *Cochran*, 73 F.3d at 1317. Defendants have produced evidence to demonstrate that the conduct in issue was not the product of retaliation.

In the prison context, the plaintiff must establish that the prison authorities' retaliatory action did not advance the institution's legitimate goals of preserving internal order and discipline, or that it was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (citations omitted). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532. Claims of retaliation in the prison context are treated with skepticism "because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Moreover, if there is no impairment of a plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *Perry*, 408 U.S. at 599 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)).

Additionally, the plaintiff must demonstrate that the protected activity was the "but for" cause of the adverse action alleged. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006) (employment discrimination). Causation can be inferred when the adverse action occurs close in time to the plaintiff's protected activity. *See Foster v. Univ. of Maryland E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015). Defendants can, however, offer legitimate and permissible reasons for their action to refute the plaintiff's evidence. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016).

Taking the evidence in the light most favorable to Giles, he has not established that "but for" filing suit, he would not have been removed from the work release program. Giles acknowledges that Bratten filed an incident report stating that Giles made a comment about running from the work release road crew and escaping. Thus, it appears that Giles was removed from work release to advance WCDC's goals of preserving internal order and discipline. And, although Intel's investigation concluded that the escape accusation was unfounded, Giles seems to have been kept off the work release program due to an investigation into his admitted abuse of the PREA hotline.

Giles fails to establish impermissible retaliation as the factor that led to his removal from work release. Therefore, the Correctional Defendants are entitled to summary judgment.

### B. Medical Defendants

Giles alleges that the Medical Defendants continuously denied him medical care while he

was at WCDC.  In addition, he claims that they retaliated against him by preventing him from entering the work release program.

The Eighth Amendment to the Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  Notably, it "proscribes more than physically barbarous punishments."  *Estelle*, 429 U.S. at 103.  It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'"  *Id.* (citation omitted).  Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'"  *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).  In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates."  *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer*, 511 U.S. at 832); *Raynor*, 817 F.3d at 127.  "It is beyond debate that a 'prison official's deliberate

indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Of relevance here, in order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Proof of an objectively serious medical condition, however, does not end the inquiry. As the Court explained in *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017), "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which

is a subjective inquiry."

In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Put another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "The necessary showing of deliberate indifference

can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."). Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106). Further, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.

But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

The evidence, viewed in the light most favorable to Giles, establishes that he received constitutionally adequate medical care. Giles's primary complaint is that he repeatedly informed medical staff about pain in his leg and that they refused to give him emergency treatment. Nothing in his medical record, however, supports this claim. Rather, Giles's medical records indicate that he was routinely seen by nurses and other providers, during which time no symptoms of leg pain were noted. Moreover, the record shows that segregation rounds were completed on Giles daily and he continued to have access to the sick call process. When Giles filed a grievance regarding this matter, an investigator immediately responded and found his claim to be unsubstantiated, noting that it was already addressed when Giles was seen by medical providers.

As to Giles's bald allegations that the Medical Defendants improperly gave him seizure medication and failed to prescribe his mental health medication, he fails to show that he was exposed to a substantial risk of serious harm or that he suffered a significant injury. Thus, he fails to show that the alleged conduct amounted to deliberate indifference by the Medical Defendants. *See Estelle*, 429 U.S. at 105-06 (holding that an inadvertent failure to provide adequate medical care does not amount to deliberate indifference).[5]

---

[5] To the extent that Giles's Complaint is construed as raising state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims, without prejudice. *See* 28 U.S.C. § 1367(c)(3).

With regard to Giles's allegation that the Medical Defendants retaliated against him by preventing him from participating in the work release program by failing to give him medical clearance, his claim also fails. According to Giles, defendant Swift visited him on June 6, 2019, under the guise of a sick call, to "bargain for . . . dropping any complaints . . . in exchange that her superiors Dr. Bruce and [Chewning] would then medically clear [him]" for the work release program. ECF 13; ECF 15. The Medical Defendants noted, however, that Giles was on work restriction due to his various complaints of pain, and that they would enroll him in chronic care for pain management. Thus, Giles has not made a prima facie showing that the filing of this suit was the motivating factor behind the Medical Defendants' allegedly improper conduct of implementing a work restriction. In any event, Giles admits that he was placed on work release within 18 days after Swift's visit.

As Giles fails to establish deliberate indifference and impermissible retaliation on the part of the Medical Defendants, summary judgment shall be granted in their favor.

### C. Doctor Bruce

Defendant Doctor Bruce has not been served with the Complaint. Because Giles is proceeding *in forma pauperis*, the Court will review the allegations against Doctor Bruce to assess whether Giles has stated a plausible claim for relief against him. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b) (2012).

As noted, liability under § 1983 generally attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Giles has provided no specific allegations against Doctor Bruce in the Complaint, despite multiple supplements and amendments to his suit. Giles likewise has failed to allege facts to support a

claim of supervisory liability under the relevant standard. Because Giles has failed to state a plausible claim for relief against Doctor Bruce, the Court will dismiss the claims against him, without prejudice. *See* 28 U.S.C. § 1915A(b).

## IV.    Conclusion

Defendant Doctor Bruce shall be dismissed, without prejudice. No genuine issue as to any material fact is presented and the remaining defendants are entitled to judgment as a matter of law.

A separate Order follows.

January 28, 2020                                        _____/s/_____
Date                                                               Ellen L. Hollander
                                                                       United States District Judge